Filed 6/24/13  In re C.V. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re C.V., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>          Plaintiff and Respondent,<br><br>v.<br><br>C.V.,<br><br>          Defendant and Appellant. | A135714<br><br>(Alameda County<br>Super. Ct. No. SJ1218782) |

## I. INTRODUCTION

After a contested jurisdictional hearing, the juvenile court found the allegations of a juvenile wardship petition alleging that appellant had possessed a controlled substance, i.e., cocaine base, for sale to be true.  Later, another such court determined appellant to be a ward of the court and ordered the probation office to find a suitable facility for him. Appellant appeals, claiming that the first juvenile court erred in not admitting into evidence the testimony of two witnesses who would have proffered testimony questioning the veracity of two of the officers involved in his arrest.  We find no abuse of discretion by the juvenile court and hence affirm its orders.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On January 28, 2012,[1] San Francisco Police Officer Calvin Lew was stationed in a room on the fourth or fifth floor of a building on Golden Gate Avenue near Hyde Street; he was serving as a "spotter," i.e., part of a "narcotics surveillance" operation in that area, an area well known for the sale of drugs, especially rock cocaine. At about 10:20 in the morning, using binoculars to look through a window, Lew saw appellant on the north side of the 300 block of Golden Gate Avenue, about 200 feet away from Lew. Appellant was, per Lew's testimony, standing face-to-face with a man later identified as David Miles. The two were only three feet apart, according to Lew, and appeared to be having a brief conversation. Miles was also with another person.

Per Lew's testimony, he saw Miles hand appellant what appeared to be "paper currency." Appellant then, per Lew, put his right hand in his mouth, then lowered that hand and placed a rock-like object into Miles' right hand. Lew testified that such was a normal procedure whereby a drug dealer first conceals and then transfers a drug, wrapped in "clear plastic," to a buyer.

After these transfers, Miles walked east on Golden Gate Avenue, "jay-walked to the south side of the street," and then proceeded south on the west side of Hyde Street. In so doing, he briefly removed the "rock" from his mouth, examined it, and then put in back in his mouth. While this was going on, Lew notified the police "arrest team" he was working with.

A member of that team, Officer Joseph Toomey, received the description of Miles from Lew, and stopped Miles as he was nearing McAllister on Hyde Street. Toomey placed a "nerve hold" on Miles and told him to spit out whatever was in his mouth. Miles did so, and spat out three baggies of what were later identified to be rocks containing a total of .08 grams of cocaine base, a "useable amount."

After Miles had been arrested, Lew directed other officers in the police team to stop and arrest appellant, who at that time was walking west on Golden Gate Avenue

---

[1] All further dates noted are in 2012.

2

toward Larkin Street. Officer Herbert and his partner received that transmission and stopped and arrested appellant at the corner of Larkin and Golden Gate. They took him to the Tenderloin police station, searched him, found no crack cocaine on his person, but did find $200 in cash.

Appellant, then 16, testified in his own defense. He stated that, on the day in question, he had come to San Francisco from his home in Oakland to pay off a loan to a friend. As he was walking past the Civic Center, appellant continued, a person apparently "a Honduran," asked him for a cigarette. Appellant "handed him the pack of cigarettes" he was carrying and then also a lighter, per the man's request. That man then walked a little bit away and began speaking to a Black male, who gave the first man some money. Appellant asked for, and got, his cigarettes and lighter back, and also gave the second man a cigarette, but stood away from both men as he thought he might be witnessing a drug sale.

When he was stopped and arrested by the police, a search of him disclosed a cell phone, the package of cigarettes, a lighter, marijuana, and $217 in cash in his wallet. Appellant, however, denied that he had sold any cocaine that day or at any other time, and stated that the marijuana was "for my own use."

The parties stipulated that the court could read and consider two written statements. In one, a friend of appellant's, Franklin Perez, stated that he had previously loaned appellant $200 to pay his rent. On the day in question, appellant had called Perez to tell him he was in the Civic Center area and wanted to repay Perez the $200 he owed him. In a second statement, appellant's nephew and roommate, stated that appellant had told him that he had borrowed $200 "from a friend named Franklin" to pay his share of the rent. He also stated that appellant "does not sell drugs and has never been arrested before."

In rebuttal, Officer Lew testified that (1) the person who was with Miles on the day in question was a woman named Michele Johnson, (2) appellant was the only Latino male that he saw in the area in question that day, and (3) he did not see appellant give either cigarettes or a lighter to anyone.

3

During the course of the jurisdictional hearing, appellant attempted to call two witnesses to testify as to the credibility of Officers Lew and Herbert. The first was named Virginia Roberson, and she allegedly would have testified that Officer Lew had caused her arrest for allegedly selling crack cocaine but who, when arrested, was found not to possess any such drugs (although, apparently, another woman did).

The other proffered witness was a man named Marcella, who allegedly would have testified that Officer Herbert had stated to him that "he searches anyone whenever he feels like it" and that "he doesn't need consent" and that "he doesn't need reasonable or probable cause . . . ."

The court excluded the first evidence, i.e., the proffered testimony of Ms. Roberson on Evidence Code section 352 (section 352) grounds, i.e., on the basis that any marginal relevance was "outweighed by potential collateral issues and undue consumption of time." It similarly excluded the proffered testimony of Mr. Marcella on the basis of relevancy and stated that, even if marginally relevant, it would consume unwarranted time.

On the basis of the evidence presented the preceding day (and summarized above), on April 12 the juvenile court found the allegations of count 1 of the petition to be "true beyond a reasonable doubt." The following day, it ordered the case transferred to the Alameda County juvenile court because of appellant's residence there.

On April 17, the Alameda County Superior Court accepted the transfer of the case to its docket, in view of appellant's residency there.

On May 1, the Alameda County juvenile court adjudged appellant to be a ward of the court and placed him on probation for placement in a suitable foster home to be determined later.

On June 6, that court was informed that appellant had been placed in custody in Seattle, Washington, by the federal Immigration and Customs Enforcement Agency. On June 13, the court then dismissed the previously-ordered wardship and terminated appellant's probation.

The same day, appellant filed a timely notice of appeal.

4

## III. DISCUSSION

We reject appellant's claims of error by the juvenile court in not permitting the testimony of Roberson and Marcella. The rulings of that court were, clearly, correct under both the standard of relevance provided by Evidence Code section 210 and the broad discretion granted to the trial court regarding the admission of evidence by section 352. Finally, the exclusion of evidence by a trial court mandates reversal when, but only when, that exclusion caused a miscarriage of justice. (Evid. Code, §§ 353, subd. (b), 354.)

Our Supreme Court recently summarized these principles in *People v. Richardson* (2008) 43 Cal.4th 959, 1000-1001, thusly: " ' " 'Only relevant evidence is admissible [citations], and all relevant evidence is admissible unless excluded under the federal or California Constitution or by statute. [Citations.] Relevant evidence is defined in Evidence Code section 210 as evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." The test of relevance is whether the evidence tends " 'logically, naturally, and by reasonable inference' to establish material facts . . . . [Citations.]" [Citation.] The trial court has broad discretion in determining the relevance of evidence . . . .' " ' [Citation.] Relevant evidence may nonetheless be excluded under [section 352] at the trial court's discretion if 'its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' We review rulings under this section for abuse of discretion. [Citation.] [¶] It is also well settled that the erroneous admission or exclusion of evidence does not require reversal except where the error or errors caused a miscarriage of justice. (Evid. Code §§ 353, subd. (b), 354.)" (See also *People v. Ledesma* (2006) 39 Cal.4th 641, 701; *People v. Carter* (2005) 36 Cal.4th 1114, 1166-1167; *People v. Crittenden* (1994) 9 Cal.4th 83, 132; *People v. Fields* (2009) 175 Cal.App.4th 1001, 1016.)

Under these standards, there was no error by the trial court and certainly none which resulted in a "miscarriage of justice." First of all, appellant's proffer of the

5

testimony of Ms. Roberson was, apparently, intended to demonstrate, or at least suggest, that Officer Lew was incorrect—or even was making deliberate misstatements—when he testified about the transaction he had witnessed appellant make with Miles on the day in question. But in point of fact, it did not. Ms. Roberson did not possess any crack cocaine when Officer Lew, also apparently "the spotter in her case", had allegedly seen "her sell crack cocaine and there was no crack cocaine recovered from her." But this is of no relevance at all, because defense counsel promptly admitted, in response to a question from the court, that the person "she allegedly sold to" did in fact "have crack cocaine on them, yes." That admission, in and of itself, renders the court's refusal to allow Ms. Roberson to testify about the event involving her and Officer Lew clearly correct.

Second, the court was also correct that, under the broad discretionary standard of section 352, it could properly determine that allowing the testimony of Ms. Roberson would simply consume far more time than it was worth. As the court said: "I don't think it's relevant. Really don't. And if it is relevant, as I say, I think it's outweighed by potential collateral issues and undue consumption of time. I'll exclude it pursuant to [section] 352."

In view of both (1) the dubious relevance of the fact that Ms. Roberson had no cocaine on her (although the other person did) and (2) the broad discretion granted a trial court under section 352, there clearly was no error in the juvenile court's ruling rejecting admission of her testimony. (See, e.g., *People v. Dement* (2011) 53 Cal.4th 1, 51-52; *People v. Gurule* (2002) 28 Cal.4th 557, 619; *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.)

The same holds true regarding the proffered testimony of Marcella, who apparently was going to testify "that this officer [Officer Herbert] made statements to him that he searches any one whenever he feels like it; that he does—that he doesn't need consent; that he doesn't need reasonable or probable cause . . . ." The trial court promptly rejected this proffer because "[h]ere he did have probable cause. He made an arrest. And you don't need consent if you search someone pursuant to an arrest."

Again, the trial court was correct in excluding this proffered testimony.

6

First of all, any such testimony would not have been relevant to whether Officer Herbert properly arrested appellant. As noted in the summary of the facts set forth above, Officer Herbert's search of appellant was conducted *after* (1) Lew reported to Herbert what he had seen take place between appellant and Miles and (2) appellant had been arrested. Further the post-arrest search of appellant had produced, as noted above, over $200 in cash. Thus, to put it simply, nothing that Officer Herbert might have said to or in the presence of Marcella was at all relevant to whether there was anything unlawful about the search he conducted of appellant.

Second, "the admissibility of any past misconduct for impeachment is limited at the outset by the relevance requirement of moral turpitude." (*People v. Wheeler* (1992) 4 Cal.4th 284, 296.) The alleged statement by Officer Herbert clearly does not fall into that category. Officer Herbert's conduct in this case consisted of making an arrest and a subsequent search (a search which produced incriminating evidence) on the basis of eyewitness information supplied him by another officer. Such does not, even remotely, falls into the category of "moral turpitude."

Third and finally, the trial court was also correct that any possible relevancy of the testimony of Marcella would probably lead to, e.g., contradictory testimony by Officer Herbert—and presumably others—and thus would be "outweighed by undue consumption of time."

For all these reasons, the court's decision to exclude the very marginal proffered testimony of Roberson and Marcella was not at all an abuse of discretion under section 352.

Finally, we also reject appellant's contentions that exclusion of the testimony of these two witnesses (1) constituted prejudicial error and (2) deprived him of due process. As to the first point, for the reasons noted above, we simply do not agree that any evidentiary error was committed. Further, as noted in the Attorney-General's brief, there was substantial evidence presented via the testimony of Officer Lew and his colleagues that a drug deal did indeed take place at the time and place noted above. Thus, any error

7

in the exclusion of the proffered testimony of Roberson and Marcella was clearly harmless under *People v. Watson* (1956) 46 Cal.2d 818.

We also reject appellant's contention that the juvenile court's rulings regarding the proffered testimony of Roberson and Marcella "made the hearing fundamentally unfair to Christian and deprived him of due process." The proper exercise by a court of the "broad discretion" accorded it under section 352 (see cases cited at page 6 *ante*) regarding the propriety of admitting or excluding certain evidence does not infringe upon a defendant's constitutional rights. (See, e.g., *People v. Cunningham* (2001) 25 Cal.4th 926, 999; *People v. Fudge* (1994) 7 Cal.4th 1075, 1102-1103.) And, bearing in mind the extremely marginal nature of the proffered testimony of Roberson and Marcella, it surely did not do so here.

## IV. DISPOSITION

The orders appealed from are affirmed.

_____
Haerle, J.

We concur:

_____
Kline, P.J.

_____
Lambden, J.